# The Chicago and Erie Railroad Company et al.

## v.

## Henry H. Meech.

*Filed at Ottawa November 9, 1896.*

1. RAILROADS—*owner liable for acts of company using tracks.* A company owning railway tracks and the franchise connected therewith is liable for injuries resulting from the negligent and unlawful operation of the road, whether by itself or any other corporation which it authorizes or permits to use its tracks.

2. APPEALS AND ERRORS—*presumption that Appellate Court has done its duty.* The Supreme Court must presume that the Appellate Court has faithfully performed its statutory duty of reviewing the evidence and determining whether it sustains the judgment.

3. SAME—*failure of Appellate Court to review questions of fact.* The Supreme Court cannot review controverted questions of fact, although it is claimed that the Appellate Court has accepted the verdict as final without examination or consideration.

4. SAME—*when improper testimony is not ground of reversal.* The admission, in an action against railroad companies for personal injuries upon a railroad jointly used by them under leases, of testimony of witnesses that they were unable to answer whether there was an arbitration agreement between the defendants, or that they think there was such agreement, is not reversible error.

5. SAME—*subsequent exclusion of immaterial testimony cures error of its admission.* The admission of immaterial testimony which is immediately stricken out and excluded from the jury, with the exception of matter already in evidence and not controverted, is not cause for reversal.

6. EVIDENCE—*when plaintiff's income before injury may be shown.* Evidence of the income of plaintiff in an action for personal injuries, before and after the injury, is admissible under a declaration averring that he has been prevented from attending to his usual business, and from earning and receiving large gains and profits.

7. PLEADING—*when inability of plaintiff to do business must be set out specifically.* To entitle a plaintiff in an action for personal injuries to recover for inability to work at his ordinary employment, the declaration need contain only a general averment of such inability, caused by the injury; but to recover for loss of profits depending upon the performance of some special engagement, the latter, and the facts on which it is based, must be set out.

8. INSTRUCTIONS—*when modification by substituting word "may" for "should" is not error.* It is not error for the court to modify an

163—20

| 163 | 305 |
| 69a | 104 |
| 69a | 112 |

| 163 | 305 |
| 77a | 258 |

| 163 | 305 |
| 178 | 191 |
| 80a | 74 |

| 163 | 305 |
| 82a | 206 |
| 82a | 211 |

| 163 | 305 |
| 182 | 300 |
| 182 | 527 |

| 163 | 305 |
| 88a | 169 |

| 163 | 305 |
| 89a | c516 |
| 89a | c530 |

| 163 | 305 |
| f96a | 3514 |

| 163 | 305 |
| 194 | c387 |
| d195 | 1537 |
| 197 | 1251 |

| 163 | 305 |
| 102a | 1255 |
| 102a | 1312 |
| 102a | 2619 |
| 102a | 3619 |

| 163 | 305 |
| 200 | c285 |
| 200 | 1333 |
| 103a | 3131 |

| 163 | 305 |
| 104a | 1102 |
| 105a | 1402 |
| 105a | 2467 |

| 163 | 305 |
| 206 | 2180 |
| 206 | 7330 |
| 107a | c406 |
| 107a | 2442 |
| 108a | 3387 |

| 163 | 305 |
| 110a | 105 |

| 163 | 305 |
| 211 | 1458 |
| 111a | 448 |
| 112a | 586 |

| 163 | 305 |
| 212 | 1336 |
| 113a | 2164 |
| 113a | 1268 |

instruction that the interest of plaintiff "should" be taken into consideration in determining the weight of his testimony, by substituting the word "may," as both forms mean substantially the same.

9. SAME—*as to plaintiff's duty to use care concerning his injuries.* An instruction that plaintiff in an action for personal injuries is bound to use ordinary care to render the injury no greater than necessary, and to employ such medical assistance as ordinary prudence in his situation requires, and to use ordinary judgment and care in so doing, is misleading, as implying that defendant might be relieved of all liability by the plaintiff's failure to use such care.

10. NEGLIGENCE—*rule as to recovery where plaintiff's own negligence increases his damage.* The fact that a plaintiff's own negligence increases his damage does not relieve defendant from liability for the consequences of his negligent acts, so far as they are separable from the results of such negligence of the plaintiff. .

11. TRIAL—*prejudicial happenings at trial—discretion of court as to instruction.* It is a matter of discretion for the trial court whether or not plaintiff's becoming hysterical in an action for personal injuries, and his removal from the court room, with a cry by his wife, "You are killing my husband," etc., require any instruction.

12. NEW TRIAL—*hysterical exclamations of plaintiff at trial—when not ground for.* That a plaintiff or defendant or witness suddenly swoons or faints, or gives vent to hysterical exclamations, does not call for a new trial when not intentional and from an improper motive, especially where the adverse party does not ask for a continuance of the case, but lies by and takes his chances for a verdict.

CRAIG, PHILLIPS and WILKIN, JJ., dissenting.

*Chicago and Erie Railroad Co.* v. *Meech,* 59 Ill. App. 69, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

WILL H. LYFORD, and FRANK O. LOWDEN, (W. O. JOHNSON, JOSEPH B. MANN, and EDGAR A. BANCROFT, of counsel,) for appellants:

The court erred in permitting plaintiff to testify, over the objection of the defendants' counsel, what his income from his business had been for the year before the collision and what since. *Fisher* v. *Jansen,* 128 Ill. 549; *Bierbach* v. *Rubber Co.* 54 Wis. 208; *Masterson* v. *Mt. Vernon,* 58 N. Y. 391; *Railway Co.* v. *Friedman,* 146 Ill. 583; *Taylor* v,

*Town of Monroe,* 43 Conn. 36 ; *Tomlinson* v. *Town of Derby,* id. 562; 2 Greenleaf on Evidence, sec. 254; 1 Chitty's Pl. (4th ed.) 328, 346; Sedgwick on Damages, (4th ed.) 682-685; *Bristol Manf. Co.* v. *Gridley,* 28 Conn. 201 ; *Squier* v. *Gould,* 14 Wend. 159; *Baldwin* v. *Railroad Co.* 4 Gray, 333.

Any incident occurring in the trial of a case which does not fall within the lines of legal evidence or due and orderly procedure, such as misconduct of parties or their counsel, whether intentional or not, if such incident may unduly prejudice either party, is ground for a new trial. *Hennies* v. *Vogel,* 87 Ill. 242 ; *Railroad Co.* v. *Davis,* 130 id. 151; *Knight* v. *Freeport,* 13 Mass. 218; *Cottle* v. *Cottle,* 6 Greenl. 140; *Rudolph* v. *Landwerlen,* 92 Ind. 34; *Essex* v. *McPherson,* 64 Ill. 249; *Huston* v. *Vail,* 51 Ind. 299; *Martin* v. *Morclock,* 32 Ill. 489; *Freeman* v. *Dempsey,* 41 Ill. App. 554; *Rochester* v. *Shaw,* 100 Ind. 268.

EDGAR TERHUNE, (A. W. BROWNE, of counsel,) for appellee.

Mr. JUSTICE BAKER delivered the opinion of the court:

This is an action on the case for personal injuries, brought by Meech, the appellee, against the Chicago and Erie Railroad Company, the Chicago and Eastern Illinois Railroad Company and the Chicago and Western Indiana Railroad Company. The result of a jury trial in the Superior Court of Cook county was a verdict against the three corporations, jointly, for $15,000. A *remittitur* of $7000 was entered, and final judgment rendered for $8000 damages, and costs. The judgment was afterwards affirmed in the Appellate Court and this further appeal then prosecuted.

There was a joint user, under leases, of the tracks of the Chicago and Western Indiana Railroad Company by the Chicago and Eastern Illinois Railroad Company and the Chicago and Erie Railroad Company. On the evening of January 13, 1893, appellee was a passenger on a

suburban passenger train of the Chicago and Eastern Illinois Railroad Company, when a passenger train of the Chicago and Erie Railroad Company ran into and telescoped the rear end of said suburban train while the latter was standing at or just leaving the Fifty-fifth street station on the line of the Chicago and Western Indiana railroad tracks in the city of Chicago, and appellee was injured as a result of such collision. It is the settled law of this State, that when injury results from the negligent or unlawful operation of a railroad, whether by the corporation to which the franchise is granted or by another corporation or other corporations which the proprietary company authorizes or permits to use its tracks, the company owning the railway tracks and franchise will also be liable. *Pennsylvania Co.* v. *Ellett*, 132 Ill. 654, and authorities there cited.

Appellants claim that the Appellate Court, in rendering its judgment of affirmance, evaded the duty which rested upon it of reviewing the evidence and determining whether it justified the verdict of the jury, and without examination or consideration accepted the verdict as final upon all questions of fact. As we said in *Chicago and Alton Railroad Co.* v. *Heinrich*, 157 Ill. 388, it is the duty of the Appellate Courts, under the law as it exists in this State, to consider the testimony, and if they find that the verdict and judgment are not supported by it, or are clearly against the weight of evidence, to set aside such verdict and reverse such judgment. A performance of this duty is absolutely essential for the preservation of the rights of citizens and property owners in all those classes of cases where the judgments of the Appellate Courts are final and conclusive upon all questions of fact. But as we also said in the case last cited, we cannot do otherwise than presume that the Appellate Court has faithfully performed that duty, and has found that the evidence properly sustains the verdict and judgment. Yet be this as it may, we are expressly prohibited by the

statute from reviewing, in a case like this, the decisions of the courts below upon controverted questions of fact.

A claim is made that it was reversible error to allow the plaintiff, over the objections of defendants, to ask the witnesses Clarke, Rubridge and Lyford the questions that were asked them in regard to an arbitration agreement among the defendants, or some of them. In answer to the question "if he knew whether there were any contracts between the roads, or any of them, in regard to the accident," the witness Clarke answered that he was unable to answer the question. In answer to a like question addressed to the witness Rubridge he answered, "I think there was," but he was neither asked any question nor made any answer in regard to the contents of such agreement. The witness Lyford, in answer to a like and further question, answered, in substance, that there was an agreement entered into with reference to the accident; that it was between the Chicago and Eastern Illinois Railroad Company and the Chicago and Erie Railroad Company, and made provision for an arbitration in regard to the accident; that "the result of that arbitration was to determine, as between the two above mentioned companies, the liability for that accident," and that "it further provided that there should be submitted to the arbiters only the written evidence which was taken in shorthand at the investigation held immediately after the accident occurred; that there should be submitted to the board of arbiters a time-card which was in force, and the book of rules of the Chicago and Western Indiana Railroad Company which was in force at the time the accident occurred; also a plat showing the position of the tracks, etc.; that the arbiters might, if they saw fit, visit the scene of the accident." At the close of his testimony the evidence of this witness concerning the contents of this arbitration agreement was stricken out by the court, except the reference to the rules and regulations.

We are wholly unable to see how the testimony of either Clarke or Rubridge could by any, even remote, possibility have any effect upon the verdict of the jury. Excluding the matter of the reference to the rules of the Western Indiana company contained in the agreement, the same may be said in respect to the testimony of Lyford in regard to the contents of the agreement. It was wholly immaterial, and it seems impossible that it could in any way influence the verdict of reasonable and sensible jurors. At all events, with the exception of the reference to the rules and regulations of the Western Indiana company it was immediately stricken out and excluded from the jury. And said rules and regulations were then already in evidence before the jury, and it is manifest from the other evidence in the record that all of the defendant railroad companies were governed by and operated under those rules and regulations, and no claim to the contrary is or was made. Even Lyford testifies that he knows, of his own knowledge, that the Eastern Illinois company uses the Western Indiana tracks under certain leases, and that while upon the Western Indiana tracks the Eastern Illinois trains are subject to the orders and rules and regulations of the Western Indiana company, as also are all other trains which use those tracks. Whatever of admission there may be in the arbitration agreement in respect to said rules and regulations is merely cumulative to plenary proof otherwise in the record, and which was not and is not disputed. If any errors were committed in allowing the questions that were asked either Clarke, Rubridge or Lyford, then such errors worked no injury and afford no just ground for reversing the judgment.

The averment of damages in the first and second counts of the declaration is, in part, as follows: "And has been prevented from attending to his usual business and avocation, and earning and receiving large emoluments, which he otherwise would have earned and re-

ceived." In the third count the averment, in part, is: "And as the immediate result of said injuries plaintiff has heretofore been hindered and prevented, and will hereafter be hindered and prevented, from attending to and transacting his affairs and business, and plaintiff has heretofore been and will hereafter be deprived of large gains and profits, which he might otherwise and would have acquired in said business." And in the fourth count the statement is substantially the same. The plaintiff testified at the trial that he was a contracting painter at the time of the accident, and that it was his mode of business to obtain contracts for painting and employ others to assist in doing the work. He was then permitted to state, over the objections of defendants, that since the accident he had not been able to make a living. The following then occurred:

Q. "I will now ask you to state, as nearly as you can, how much you have earned as a painter, without regard to any special contracts, since the 13th day of January, 1893,—the total amount. (Same objection by each of the defendants; objection overruled by the court; exception by each of said defendants.)

A. "$100 would cover it.

Q. "I will ask you to state how much you made as a painter, without regard to any special contracts, for say a year anterior to the 13th day of January, 1893. (Objected to by each of said defendants; objection overruled by the court; to which ruling of the court each of said defendants excepted.)

A. "I can approximate the amount. I can't give the exact amount. $3000."

It is urged the court erred in permitting the plaintiff to testify what his income from his business had been for the year before the collision and what since.

In *City of Chicago* v. *O'Brennan*, 65 Ill. 160, the trial court permitted appellee to give in evidence the fact of particular engagements to lecture in the State of Virginia,

and the probable gains thereof, and that appellee was prevented from fulfilling them by reason of the injury, and his estimates of the special loss thereby sustained. Appellant insisted this evidence was inadmissible, on the ground that it was special damage, which was not alleged in the declaration. This court held it was necessary these special damages, and the facts on which they were based, should have been set out in the declaration.

In *City of Bloomington* v. *Chamberlain*, 104 Ill. 268, the averment in the first count of the declaration was, that plaintiff was hindered from transacting her business and affairs, and deprived of large gains and profits which she otherwise would have earned; and in the second count, that the injuries received had a permanent effect upon her personal, bodily strength and ability to make a living, and that she had been rendered unable to earn or make for herself a living, and had been deprived of large gains and profits which she otherwise would have earned. On the trial, against the objection of the defendant, the court permitted the plaintiff to testify that she had taught school at $50 per month. This court said (p. 274): "We think it was admissible, under these averments in the declaration, to show what was the business of the plaintiff, and that she had been disabled from pursuing it by reason of her injuries. The testimony objected to tended to no more than this, and to give the jury some idea of the wages of school teaching." And further said: "Had it (the evidence) gone to show the loss of the profits of a particular engagement which had been made for teaching school, another question would have been presented,—the one appearing in *City of Chicago* v. *O'Brennan*, 65 Ill. 160." Moreover, in *City of Bloomington* v. *Chamberlain* special reference is made to *Luck* v. *City of Ripon*, 52 Wis. 196, and the doctrine of that case expressly approved and its authority admittedly recognized and followed.

In said case of *Luck* v. *City of Ripon* the averment was
that the plaintiff, Minnie Luck, "was thenceforth, until
the commencement of this action, hindered from attend-
ing to her usual and necessary business, and has ever
since remained and continued, and now is, sick, sore,"
etc. It was claimed on the appeal that it was error to
permit the plaintiff to give evidence of the fact that she
was a midwife, that after the injury she was unable to
pursue her business as such, and that she thereby suf-
fered loss. The court said: "When the complainant
states facts showing that the injury has been such as to
render it impossible for the injured party to pursue his
ordinary business, and damages are claimed for the loss
of time in such business, the plaintiff should be permit-
ted to show upon the trial what his business is, and what
damages he has suffered by reason of inability to pur-
sue the same."

In *Wabash Western Railway Co.* v. *Friedman*, 146 Ill. 583,
the allegation in the declaration was that the plaintiff
became sick, lame, etc., "from thence hitherto" suffering
great pain, and being prevented from attending to his
business, and thereby losing profits, etc. On the trial
the plaintiff had been permitted, over the objection of
the defendant, to introduce evidence tending to prove
that the plaintiff, at the time of the injury, was receiving
a compensation of $3000 per annum for his services as a
traveling salesman. It was held that the evidence went
to the extent of showing the loss of profits of a particular
engagement, and its admission was erroneous under the
rule held in *City of Chicago* v. *O'Brennan*, *supra*. In the
opinion of the court the case of *City of Bloomington* v.
*Chamberlain* is referred to with approval, and in respect
thereto it is said (p. 594): "There the admitted evidence
was held not to be erroneous, but the ruling was placed
on the express ground that the evidence was not as to
the loss of profits of a particular engagement."

In *Fisher* v. *Jansen*, 128 Ill. 549, it is held that direct proof of any specific pecuniary loss is not indispensable to a recovery of damages for an inability to labor or transact business, resulting from personal injuries.

As shown in the opinion of Gary, J., filed in this cause in the Appellate Court, in numerous cases for personal injuries decided in this court during the time it was authorized to review the facts in such cases, the amounts and the sources of the earnings of the several plaintiffs, received by them before their respective injuries, were taken into consideration in passing upon the question of damages,—and this, as is apparent, in cases where there were no allegations of special damage other than such as are contained in this declaration. *Illinois Central Railroad Co.* v. *Welch*, 52 Ill. 183; *Illinois Central Railroad Co.* v. *Weldon*, id. 290; *City of Decatur* v. *Fisher*, 53 id. 407; *City of Chicago* v. *Elzeman*, 71 id. 131; *Illinois Central Railroad Co.* v. *Ebert*, 74 id. 399; *City of Aurora* v. *Hillman*, 90 id. 61.

The rule deducible from the cases in this State is, that in order to recover compensation for inability to work at the plaintiff's ordinary and usual employment or business, all that is necessary in the declaration is the general averment of such inability, caused by the injury, and consequent loss and damage, and that proof of his particular employment or business and of his ordinary wages or earnings therein is admissible in evidence under such general averment, but that when it is sought to recover for loss of profits or earnings that depend upon the performance of a special contract or engagement, then these special and particular damages, and the facts on which they are based, must be set out in the declaration. The distinction we have noted may be a relaxation of the common law rule, but it is founded upon the precedents to be found in our Reports.

It may be that the testimony in the case at bar in regard to prior earnings was entitled to little weight,

owing to the fact that it was confined to the earnings of but a single year; but that is a question of weight of evidence, and a matter that was open for argument before the jury and the courts below. And if appellants had reason to suppose that the year immediately preceding the accident was, for any cause, an exceptional year, they could have shown that fact on cross-examination or by the introduction of testimony.

It follows from what we have said, the trial court committed no error in admitting the challenged testimony.

Appellants asked the court to instruct the jury that in passing upon the weight to be given to the testimony of the plaintiff himself while upon the witness stand, they "should" take into consideration his interest in the event of the suit. The court modified the instruction before giving it to the jury, by substituting the word "may." for the word "should." This action of the court is assigned as error. The interest of a party or of a witness in the event of the suit is properly to be regarded in estimating the weight of his testimony. In *Padfield* v. *People*, 146 Ill. 660, we said that the interest of a party in the event of a suit "may be regarded for the purpose of affecting his credibility." It is possible that a jury might understand the use of the mandatory word "should," in the instruction asked, as meaning that under the law interest would necessarily detract from credibility; and if so understood, the instruction might mislead, and would be an invasion of the province of the jury. An interest in the event of a suit does not necessarily detract from the credibility of a witness—it is simply a circumstance that the jury may take into consideration. (*Douglass* v. *Fullerton*, 7 Ill. App. 102.) And the question of credibility is always one for the jury. It would not have been error to have given the instruction in the form in which it was submitted, (*Williams* v. *Shup*, 12 Ill. App. 454; *State* v. *Vanzant*, 80 Mo. 67;) nor was it error for the court to make the modification it did. Either form is

substantially accurate and both forms mean substantially the same thing.

It is assigned as error that the court modified the eighth instruction tendered by defendants and gave the same as modified. Said instruction as tendered was as follows:

"If the plaintiff was injured by the collision, he was bound by law to use ordinary care to render the injury no greater than necessary. It was, therefore, his duty to employ such medical assistance as ordinary prudence in his situation required, and to use ordinary judgment and care in so doing."

The instruction was likely to mislead the jury. It stated a correct but abstract rule of law, and gave the jury no directions in regard to its proper application to the case in hand. The jury would probably understand therefrom, that although there was culpable negligence on the part of the defendants and consequent injury to the plaintiff, yet that if any aggravation of injurious consequences was caused by subsequent negligence of the plaintiff, then there would be no cause of action even for such consequences as necessarily resulted from the injury. The doctrine is, that where, after the occurrence, the plaintiff, by his own negligence, increases the damage, then the defendant is liable only for the consequences of his own acts, and not for those of the plaintiff or of a third person which are separable from the results of his own acts. (1 Harris on Damages by Corporations, sec. 224; *Workman* v. *Great Northern Railroad Co.* 32 L. J. Q. B. 279.) There was no error in refusing to give the instruction as asked; and even as modified and given it stated the law more broadly and more favorably for defendants than it should, and it was the plaintiff instead of the defendants that had a right to complain.

It is claimed that the court erred in refusing to give this instruction:

"During the progress of the trial of this case the plaintiff was carried from the court room. Why this was necessary, if it was necessary, the jury do not know nor can they presume. They must entirely disregard such occurrence, to all intents and purposes, as though it had not taken place."

It appears that during the examination of the witness Ella Louise Hoyt the plaintiff became hysterical, broke out crying and uttered a cry of distress, and was carried out of the court room; that immediately at the time of the occurrence his wife exclaimed, "You are killing my husband—you will be responsible for the death of my husband," and that the witness began to cry and was temporarily excused from the stand. The instruction was not one that was based on the evidence that was submitted to the jury. It had reference only to the occurrence that had, several days before, temporarily suspended the trial of the case. The court had seen and heard what then transpired, and it was a matter of sound judicial discretion for the court to judge whether the circumstances required or properly called for any instruction on its part. We cannot say there was any abuse of that discretion, or that the failure to give the instruction was either detrimental to the rights of the defendants, or erroneous.

It is finally urged that the Superior Court erred in not granting a new trial for prejudicial conduct of the plaintiff in the presence of the jury. This contention has reference to the transaction to which allusion has just been made. The fact that a plaintiff or defendant, or witness, or any other person, suddenly swoons or faints, or gives vent to hysterical exclamations, or breaks down with hysteria, does not call for the granting of a new trial,— and especially so when the party claiming to be prejudiced does not ask for the withdrawal of a juror and continuance of the case, but lies by and speculates upon his chances for a verdict. It is hardly probable that the

occurrence in question affected, in any way, the verdict. If it had any effect, it was as likely to prejudice as to help the case of the plaintiff. Of course, if it appeared that the dramatic occurrence that took place in the midst of the trial was intentional and for an improper motive it would afford ground for setting aside the verdict. But here the affidavits submitted at the hearing of the motion indicate quite clearly that the plaintiff's conduct was not feigned, but was owing to the mental strain of several days of trial acting upon a weak and exhausted physical condition and a shattered nervous system.

We find in the record no sufficient cause to justify a reversal. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

CRAIG, PHILLIPS and WILKIN, JJ., dissenting.