## Henry C. Arens, Appellant, v. The Baltimore and Ohio Chicago Terminal Railroad Company, Appellee.

### Gen. No. 24,520.

1. COMMERCE, § 4*—*what constitutes interstate within Federal Employers' Liability Act.* A brakeman employed by a railway terminal company, while engaged in coupling one of its engines to an observation car which was being used in interstate commerce, and was owned by a carrier, engaged in such commerce, which was a lessee of the terminal company, was engaged in interstate commerce so as to bring a suit by him against the terminal company, for injuries received while so engaged, within the provisions of the Federal Employers' Liability Act.

2. MASTER AND SERVANT, § 715*—*coupling of couplers automatically on impact as jury question.* Whether couplers upon cars were automatic and would couple on impact so as to be in compliance with the Federal Safety Appliance Act, was a question for the jury.

3. MASTER AND SERVANT, § 302a*—*when doctrine of assumed risk not invocable.* The doctrine of assumed risk is not invocable in an action within the Federal Safety Appliance Act.

4. MASTER AND SERVANT, § 739*—*when effect of attempt to couple cars on curved track is question for jury.* The effect of a brakeman's attempting to couple cars on a curved track upon his right to recover for injuries received in making a coupling is for the jury, in a case where the doctrine of assumed risk may be invoked.

5. MASTER AND SERVANT, § 98*—*when common law of State applies to negligence in action under Federal Employers' Liability*

¹ See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*Act.* As the Federal Employers' Liability Act does not define the character or degree of negligence necessary to a recovery, and as there is no federal common law, the common law of the State will prevail on those matters, in an action under that act.

6. MASTER AND SERVANT, § 98*—*what is sufficient as common-law count charging negligence in action under Federal Employers' Liability Act.* In an action by a brakeman for injuries received while attempting to couple cars, a count, based upon the Federal Employers' Liability Act, charging failure to furnish plaintiff with a safe place to work, that defendant's foreman and conductor, knowing the danger of attempting to make a coupling on a curved track, failed to notify plaintiff of such danger though it was unknown to him, was sufficient as a common-law count under the law of this State.

Appeal from the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded. Opinion filed March 10, 1919.

JOHN G. RIORDAN, for appellant.

JAMES M. SHEEAN and CHARLES D. CLARK, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

At the conclusion of plaintiff's case the trial judge, on the motion of defendant, directed a verdict in its favor, upon which verdict the judgment appealed from was entered.

The action involved the question of interstate commerce, Federal Employers' Liability Act and the violation of the Federal Safety Appliance Act regarding couplers which shall couple automatically by impact.

We have concluded that the verdict should not have been instructed, but that the case should have gone to the jury on the first, sixth and seventh counts of the declaration. While we do not intend to pass upon the probative force of the evidence, we do hold that plaintiff by his proofs, as they were at the time of the mo-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tion for an instructed verdict, made out a prima facie case which entitled him in the absence of countervailing proof to have the jury pass upon and determine by its verdict the liability of defendant.

The defendant operated the railroad terminal of which the Baltimore and Ohio Railroad Company was, with others, a lessee. Both the lessor and lessee companies were included as defendants, but upon the trial the railroad company was eliminated on the motion of plaintiff upon defendant admitting that plaintiff was in its employ as a switchman at the time of suffering the injuries for which compensation was demanded in this suit.

The accident happened to plaintiff while he was attempting to couple defendant's engine to an observation car owned by the Baltimore & Ohio Railroad Company. The coupling was attempted to be made on a curved track. Plaintiff rode on the front footboard of the engine to a switching lead, where he got off, relined the switch and signaled the engineer to go backwards towards the observation car which was standing on the curve. The tracks began to curve from the switch point, which curve extended along the tracks about two and one-half car lengths. Plaintiff stood on the inside of the curve in position to give a signal to the engineer whenever he wanted him to change speed or stop. When about 4 to 6 feet from the car he testified he saw that the coupling was not going to make and he reached over and shoved the drawbar over as far as possible, and that after he got within about 3 feet of the car, seeing that the coupling was not going to connect, he edged out on the footboard and attempted to get off of it, and in so attempting was caught on the left side with the cut-off lever, which held him fast. The couplers did not come together. The drawbars passed each other and the coupling was not made.

The first question to be disposed of is, whether plaintiff and defendant were at the time of the acci-

dent engaged in interstate commerce so as to make the Safety Appliance Act invocable.

All of the three counts, *supra,* proceed upon the theory that plaintiff and defendant were at the time of the accident engaged in interstate commerce.

It is not contradicted that the observation car was engaged in interstate commerce and that the Baltimore & Ohio Railroad Company, who owned it, was an interstate commerce railroad. As defendant's lessee was engaged in interstate commerce with the observation car involved in the accident, defendant, its lessor, was, in the eye of the law, likewise so engaged. In other words, the interstate commerce attribute of defendant's lessee was in these circumstances imputable to defendant.

In *North Carolina R. Co. v. Zachary,* 232 U. S. 248 [9 N. C. C. A. 109], it was held that a railroad company leasing its intrastate line to an interstate railroad company created the latter its agent and it became a common carrier engaged in interstate commerce; and that an employee in preparing an engine for a trip to move freight in interstate commerce prior to the actual coupling up of the interstate cars was, in so doing, engaged in interstate commerce within the meaning of the Employers' Liability Act.

The facts and reasoning in *Johnson v. Southern Pac. Co.,* 196 U. S. 1, are persuasive both on fact and principle, and are analogous in many of their aspects to the instant case.

It is in evidence that the observation car being switched was intended to be sent on a return journey to Jersey City, New Jersey. Such being the object of the switching movement, that car, as a matter of law, must be held to have been at the time of the accident engaged in interstate commerce. *Chicago Junction Ry. Co. v. Industrial Board of Illinois,* 277 Ill. 512; *Chicago & E. R. Co. v. Meech,* 163 Ill. 305; *Anderson v. West Chicago St. Ry. Co.,* 200 Ill. 329.

The next question to be disposed of involves the

erroneous action of the court in instructing a verdict for the defendant.

Whether the Federal Safety Appliance Acts were complied with, and whether the couplers on the car and engine were at the time of the accident in compliance with the Federal Safety Appliance Acts, were automatic couplers and would couple automatically by impact, were questions of fact to be determined by the jury; likewise, what effect plaintiff's attempt to couple the engine to the observation car on a curved track might have upon his right to recover under the doctrine of assumed risk if invocable, which it certainly would not be if the case comes within the Safety Appliance Acts; but, if it were, it would be for the jury to determine.

It was not the province of the trial court to assume that the couplings complied with the Safety Appliance Acts, or that plaintiff assumed the risk of attempting to couple the engine to the car on a curved track. These were questions of fact for the jury and not of law for the court.

In *San Antonio & A. P. Ry. Co. v. Wagner*, 241 U. S. 476, it was held that the failure at any time of a coupler to couple automatically by impact sustains a charge of negligence. And as said in *Taggart v. Republic Iron & Steel Co.*, 141 Fed. 910: "A car with an automatic coupler that will not work is to all intents and purposes a car without an automatic coupler." There are many other cases in the State and United States Supreme Courts to a like effect.

A jury might not impute negligence to plaintiff in attempting to make the coupling as he did, for, as said in *Devine v. Chicago & C. River R. Co.*, 168 Ill. App. 450: "The deceased however was not responsible for the curve, nor for the use of such car thereon nor for the coupler. If by reason of the curve or any other cause the couplers would not couple on that track, and it became necessary for the deceased to go between the cars, then the statutes in question were violated."

This logic may be extended and applied to the facts in the instant case. *Luken v. Lake Shore & M. S. Ry. Co.,* 154 Ill. App. 550, affirmed in 248 Ill. 377.

In the *Luken* case, *supra,* we said, referring to both the Federal and State Safety Appliance Acts:

"These statutes make the risk that of the common carrier, and both statutes in effect abolish the common-law doctrine of the assumption of risk and contributory negligence in cases where the statutes may be invoked."

The sixth count is based upon the Federal Employers' Liability Act and charges the failure of defendant to furnish plaintiff with a safe place in which to work, that defendant's foreman or conductor failed to notify plaintiff of the dangers involved in attempting to couple the engine to the car on a curved track, which danger was known to the foreman but not to plaintiff, and that such failure to so notify plaintiff of these lurking dangers was negligence under the act.

As the Federal Employers' Liability Act does not define the character or degree of negligence necessary to a recovery, the common-law rule prevails. There being no federal common law, the common law of the State is the law of the case. In *Helm v. Cincinnati, N. O. & T. P. Ry. Co.,* 156 Ky. 240, it is said:

"If the action is based simply on negligence without any definition or limitation of that term as known and applied under the common law, then it is a familiar rule of construction that the term is to be given its ordinary significance as fixed by the common law. * * * The act of Congress does not undertake to define negligence, and in no way limits the application of the common-law rule on that subject; and, since there is no federal common law, it is the common law of the State where the accident occurred to which we must look in determining whether the acts complained of amount to negligence."

The sixth count was sufficient as a common-law count under the law of this State to permit the case to go to the jury thereunder, if there was evidence to

support its material averments and a charge of negligence.

For the reasons indicated, the judgment of the Superior Court is reversed and the cause remanded for a new trial in accordance with the views herein expressed.

*Reversed and remanded.*