THE JONES & ADAMS COMPANY

*v.*

THOMAS GEORGE.

*Opinion filed April 18, 1907.*

1. TRIAL—*when questions of assumption of risk and contributory negligence are for the jury.* Whether a driver in a coal mine assumed the risk of injury from a low place in the roof of an entry or was guilty of contributory negligence are questions of fact for the jury, even though the evidence is practically uncontroverted, unless the inference that he did assume the risk or was guilty of contributory negligence is so clearly deducible from the facts that all reasonable minds would reach that conclusion.

2. PLEADING—*what is not a variance between allegations and proof.* There is no substantial variance between allegations that the car upon which the plaintiff was riding caught on the timbers of the roof of the mine by reason of the roof being swayed down and proof that the coal in the car caught upon the timbers, one of which was swayed down by pressure of the roof above the timber.

3. DAMAGES—*when damages for nursing not recoverable.* In a personal injury case, damages for the expense of nursing the plaintiff after his injury are not recoverable, where there is no evidence that he had paid out or become liable for any sum for nursing, the evidence being that he was nursed by members of his family.

4. MASTER AND SERVANT—*servant's actual knowledge of danger is not essential to preclude a recovery.* To preclude a recovery of

damages by a servant for an injury it is not essential that he shall· have had actual knowledge of the dangerous condition, provided the condition is such as should have been known to him had he exercised reasonable care for his own safety.

5. INSTRUCTIONS—*when party cannot complain of modification.* One whose instruction as originally drawn and as modified should have been refused as invading the province of the jury is in no position to assign error upon such modification.

6. SAME—*when instruction warning jury against sympathy or prejudice should be given.* An instruction in a personal injury case warning the jury that neither sympathy for the plaintiff nor prejudice against the defendant should influence their verdict should be given where there is no other similar instruction in the series.

7. EVIDENCE—*proof of domestic relations of plaintiff in personal injury case is irrelevant.* Proof that the plaintiff in a personal injury case had a wife and three children is irrelevant; nor is the error in admitting evidence of that character cured by a *remittitur* of an arbitrary portion of the amount of damages awarded.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

Thomas George brought this action on the case against the Jones & Adams Company to recover damages for a personal injury received by plaintiff below while engaged as a driver in the coal mine belonging to the defendant company. The declaration charged that the company negligently permitted the roof of the entry through which plaintiff was required to drive in hauling cars of coal from the place where it was mined to the bottom of the shaft, to become swayed down and to remain in dangerous condition, and that while plaintiff, in the exercise of due care for his own safety, was driving a mule hitched to cars of coal through said entry, the top of the coal in the car caught on the timbers of the roof, which caused the car to tilt upward in front, thus catching plaintiff between the front end of the car and the roof and inflicting the injuries complained of. Plaintiff below recovered a verdict for $5000, $1500 of

which was remitted and judgment rendered for $3500. This judgment has been affirmed by the Appellate Court for the Third District, and by its further appeal defendant below has brought the judgment into review in this court.

H. M. STEELY, for appellant.

CHARLES TAYLOR, and S. M. CLARK, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

*First*—It is contended by appellant that the court erred in refusing to direct a verdict for appellant at the close of all the evidence. Under this assignment of error four reasons are urged: First, that appellee assumed the risk; second, that appellee was guilty of contributory negligence, which precludes a recovery; third, that the injury is attributable to the negligence of a fellow-servant; fourth, that there was a fatal variance between the declaration and the proofs.

The evidence shows that the entry in which appellee was hurt was about eight feet wide and about four feet and six inches from the top of the rail to the lowest place in the roof. The highest cars that were in use were three feet six inches above the rail. There was consequently about one foot space between the top of the sides of the car and the lowest place in the roof. It is also shown that at the place where the injury occurred the entry encountered what is known in mining parlance as a "horseback," which means that the coal deposit has been forced up into a ridge or hill by the uneven surface of the underlying strata of rock. The effect of the horseback is to compress the coal, and the vein is thinner at the horseback than elsewhere, and it not infrequently happens that the vein is entirely pinched out by the horseback. In the case at bar the horseback reduced the thickness of the vein, and as a result the roof was somewhat lower at the crest of the horseback than at other places along the entry. Another result was that the horseback caused a

slope in the track from the high point toward the bottom of the shaft for a short distance until the normal width of the vein was again reached. The evidence also shows that the roof of the entry above the horseback was of a soapstone formation, which slacks and becomes loose upon being exposed to the air. In order to obviate the danger of falls from the roof appellant had placed timbers across the roof, one end of which rested in a socket cut into the coal and the other on a beam laid lengthwise with the entry and supported by posts. The testimony shows that one of these supports had sagged down from two to four inches, thus still more reducing the space between the rails and the roof. The evidence is undisputed that appellant's manager knew of the sagging of this timber, also that the boss driver had knowledge of it.

It is argued by appellant that appellee had been driving in this mine for three years and in this entry for two months, and that his duty required him to pass under the place where he was injured fifteen or twenty times a day, and that he must have known of the condition of the roof at the place where the injury occurred. Appellee was a witness in his own behalf and testified very fully about the circumstances of the injury, but he was not asked by either party whether he knew about the sag in the roof, but circumstances are such that the jury might reasonably have found that he had such knowledge. On the other hand, it is to be noted that the entry was dark, and that the only way anything could be seen in it was by means of artificial lights, and also that the evidence tends to show that appellee was required, while passing down the incline, to hold the loaded cars back to prevent them from running on to the mule, which would require his attention, and that he was required to look ahead on the track to see that the track was clear of obstructions. While the burden of proof was on appellee to prove want of knowledge, we cannot say there was no evidence to support the finding of the jury on this point.

In considering the question whether appellee assumed the risk because of his knowledge of the danger, or whether he was guilty of contributory negligence in failing to observe the danger, this court is not permitted to weigh the evidence and determine the question upon what we might consider the preponderance of the proof, but we are only to determine whether there is any evidence fairly tending to negative the appellant's contention with respect to these questions. While the evidence here is practically uncontroverted, yet we are not prepared to say that the inference of an assumption of the risk, or of contributory negligence, is so clearly deducible from the facts that all reasonable minds would necessarily reach the same conclusion therefrom. Unless we could say this, the questions of contributory negligence and assumption of the risks by the appellee cannot be treated as questions of law. *Browne* v. *Siegel, Cooper & Co.* 191 Ill. 226; *Beidler* v. *Branshaw,* 200 id. 425; *Hewes* v. *Chicago and Eastern Illinois Railroad Co.* 217 id. 500.

The question of fellow-servant has nothing to do with this case. The miners who mine and load the coal in the rooms might be held to be fellow-servants with the driver who hauls the coal from the rooms to the bottom of the shaft, but the evidence here is that the driver, and not the miner, determined when a car was properly loaded. The evidence is, that if the car was loaded too high the driver could require the miner to take off part of the coal, and if he refused to do so the driver could refuse to haul the coal until it was properly loaded. Besides, there is no evidence that the car was improperly loaded.

Appellant's contention that there is a material variance between the proofs and the declaration cannot be sustained. At the close of all the evidence appellant made a motion to direct a verdict for appellant, and stated as one of the reasons that there was a variance between the declaration and the proof, in this: that the declaration charged that the car upon which appellee was riding caught on the timbers of

the roof by reason of the roof being swayed down, while the proof was that the coal on the car caught the timbers on the top of the entry, and that the timbers, or at least one of them, were swayed down. The difference between the car being caught and the coal on the car cannot be said to be a variance; neither is there any substantial difference between the roof being swayed down, as charged in the declaration, and the timbers being swayed down, as the evidence shows, which resulted from the pressure or swaying down of the roof above the timbers.

There was no error in overruling appellant's motion for a peremptory instruction.

*Second*—Numerous objections are made to instructions given for appellee, and complaint is made of the refusal of the court to give some and to the modification of others asked by appellant. Instruction No. 3 given for appellee is erroneous, for the reason that it authorized a recovery for the expense of nursing appellee after his injury, when there was no evidence in the record that appellee had paid out any sum or had become liable to pay for nursing. Appellee testified that he had employed no one to nurse him; that he was taken care of by his family, and that it was worth from $15 to $20. Appellee was not entitled to recover for the value of services rendered him by his family. Neither this instruction, nor the evidence upon which it was based, should have gone to the jury.

Instruction No. 5 given for appellee is also erroneous, in that it lays down the rule that the appellee must have had actual knowledge of a dangerous condition before he can be said to have assumed risks of injury therefrom. The servant not only assumes all obvious and known dangers, but also such as by the exercise of ordinary care would have been known to him. The master is not required to exercise any higher degree of care for the servant's safety than the servant is required to exercise for himself. *Missouri Furnace Co.* v. *Abend*, 107 Ill. 44; *Simmons* v. *Chicago and*

*Tomah Railroad Co.* 110 id. 340; *Abend* v. *Terre Haute and Indianapolis Railroad Co.* 111 id. 202.

Appellant complains that the court erroneously modified instructions numbered 15 and 16 offered by appellant. Both these instructions were erroneous in their original and modified form. The court should have refused both of them for the reason that they singled out a state of facts, and told the jury that if that state of facts existed, appellee would be guilty of conduct precluding a recovery. The instructions both had a tendency to invade the province of the jury, which should have led to their rejection, but since the court saw proper to modify them and to give them to the jury, appellant is in no position to complain of the error thereby committed.

Instruction No. 17, which was refused, told the jury, somewhat awkwardly, that neither sympathy for the plaintiff nor prejudice against defendant should influence their verdict. The instruction is correct in principle, and we see no justifiable reason for refusing it. There was no other instruction in the series that covered this point.

*Third*—On the trial of this case appellee was allowed to prove that he was a married man and had three children. The evidence was objected to and the objection overruled. The damages recoverable in this case can only be compensatory. The domestic relations, the financial standing or circumstances of the parties are therefore irrelevant. (1 Elliott on Evidence, sec. 178; *Barbour Co.* v. *Horn*, 48 Ala. 566; 85 Am. St. Rep. 835, and note, where many other authorities are collected; *City of Chicago* v. *O'Brennan*, 65 Ill. 160; *Pittsburgh, Ft. Wayne and Chicago Railroad Co.* v. *Powers*, 74 id. 341; *City of Joliet* v. *Conway*, 119 id. 489.) The error in admitting this evidence is virtually admitted by appellee and was recognized by the Appellate Court, but it was thought that the *remittitur* of $1500 ought in some way to cure this error. We cannot assent to this view. Evidence of this character not only tends to enhance

the damages, but it is calculated to arouse a sympathy for appellee which is liable to unconsciously influence a jury in the decision of other controverted questions of fact in the appellee's favor. It would be a dangerous precedent to hold that a party might introduce irrelevant testimony which would appeal to the sympathy, passions or prejudices of a jury in such a way as to insure him the verdict on all doubtful questions of fact, then permit the trial court to estimate how much of a gross sum awarded as damages was due to such irrelevant testimony and deduct that from the total verdict and render judgment for the balance, and thus cure an error but for which the verdict might have been in favor of the other party.

For the errors indicated the judgments of the circuit and Appellate Courts are reversed and the cause remanded to the circuit court of Vermilion county for a new trial.

*Reversed and remanded.*