## Kathryn E. Cowen, Appellee, v. East St. Louis & Sub= urban Railway Company, Appellant.

1. EVIDENCE—*what not part of res gestae.* Statements made to and by a conductor after an accident are not part of the *res gestae*, and should not be admitted.

2. EVIDENCE—*when as to pecuniary condition improper.* In an ac-

tion for personal injuries it is not proper to show the impecuniosity of the plaintiff.

Action in case for personal injuries.   Appeal from the Circuit Court of St. Clair county; the HON. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the October term, 1911.   Reversed and remanded. Opinion filed March 21, 1912.

BARTHEL, FARMER & KLINGEL, for appellant.

W. N. HORNER and TURNER & HOLDER, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This is an appeal from the Circuit Court of St. Clair county.   The trial in the Circuit Court resulted in a verdict and judgment for the appellee in the amount of $6000, to reverse which this appeal is prosecuted. The appellant is engaged in operating street cars between East St. Louis, Illinois, and St. Louis, Missouri, over the Eads Bridge.   On the evening of October 11, 1910, about the hour of six o'clock, the appellee became a passenger on one of appellant's street cars near the east end of the bridge, to be carried to the St. Louis side.   This car was provided with two long seats for passengers, one on each side of the car, with an aisle between, so that the occupants of the two seats faced one another.   When appellee entered the car the seats were all occupied and she passed through the car to the front end and stood with her face towards the west, in the direction the car was moving, supporting herself by holding on the handle of the sliding door. When the car had reached about the center of the bridge it encountered a vehicle upon the track which required it to stop; the car stood there a short time, estimated from one to ten minutes, when a car of the appellant going in the same direction approached from the rear and ran into the car on which appellee was a passenger and by reason of the collision appellee was

thrown down and injured. There was some contro-
versy in the testimony as to the manner of her fall.
Some of the witnesses claim that she fell her full
length upon the floor of the car and struck her head,
and that other passengers fell on her; and other wit-
nesses describe it somewhat differently.

The testimony indicates that she was rendered at
least partially unconscious for the time being by rea-
son of the fall. She was taken to her home in St. Louis
by some of the ladies who were in the car and they say
she was apparently in a nervous and dazed condition.
There seems to have been no dispute as to the liability
of the appellant. It appears from the statement of
counsel for appellant, preserved in the record, that he
admitted to the jury that the defendant was negligent
and that the plaintiff was without fault, and that the
defendant was liable to the plaintiff for a fair com-
pensation for the injuries which she had actually re-
ceived. The real question that was contested, was the
extent of appellee's injury and the amount of damages
that she was entitled to receive, and upon this issue
the trial was had and resulted in a judgment in favor
of appellee for $6,000.

Counsel for appellant claims that the court erred in
admitting improper evidence in behalf of the appellee
and over the objections of the appellant. The first evi-
dence complained of were statements made by persons
upon the car after the appellee had received her in-
juries. A Mrs. Favreau was permitted to state that
after the accident she asked the conductor to get aid
for the appellee and was then asked to state what the
conductor said, and answered, "I said, 'Conductor
please see to this lady, she is very badly hurt;' he
said, 'Let her go home on a car.' " Another witness,
Adele Hartman, was asked this question, "You may
state whether anything was said to the conductor about
sending her home," and she replied, "Why, we asked
him to take her home and he refused to get a carriage

for her and said she could go home on a car." Objections and exceptions were preserved to these questions and answers, and it is now contended that they were not admissible and that the appellant was prejudiced by the admission of them, because the statements of the witnesses made at the time the appellee was represented as being badly hurt and that the conductor was not willing to give her any attention, even though she was badly hurt, were immaterial and prejudicial. These statements are not admissible upon the ground that they are part of the *res gestae.*

In the case of McMahon v. Chicago City R. R. Co., 239 Ill. 334, the Supreme Court says: "This court has said that the true inquiry, according to all authorities, is whether the declaration is a verbal act, illustrating, explaining or interpreting other parts of the transaction of which itself is a part, or is merely a history or part of the history of a completed past affair."

In the case of Lecklieder v. Chicago City R. R. Co., 142 Ill. App. 139, the plaintiff was permitted over the objections of defendant to state that the conductor "said that he caught my foot with his handle raising the lever and pulled me off; that is just what he said." And again, in the case of C. & N. W. Ry. Co. v. Fillmore, 57 Ill. 265: "It was said to be error to allow the declarations of the conductor of a train, made after the accident had happened, to be introduced to the jury; whatever knowledge the conductor has as to the condition of the bridge at the time should have been stated by himself." We do not believe that these statements were admissible, as the principal inquiry in the trial was the extent of the appellee's injury, and to permit the hearsay statements of third parties that she was badly injured to be introduced in evidence was certainly prejudicial, or at least may have been. Besides, these declarations did not attempt to explain the act itself but were conclusions of third parties as to the effect that the act had upon the appellee. It was sought

by counsel for appellee to justify the admission of this evidence upon the ground that it was the duty of appellant to take care of appellee after she was hurt, and several authorities are quoted showing the liability for failure to take care of the injured party, but those were cases where the injured party prior to the injury had been placed in charge or was in control, in some manner, of the railroad company, and they neglected to perform their duty in taking care of such party and as a result of their failure to take care of the party an injury resulted, and the action was based upon their negligence in failing to care for such parties which resulted in their injury; but no such state of facts arise in this case. The action is not based upon their failure to take care of the appellee, and could not have been as she was taken care of by the ladies in the car. We do not believe this evidence is admissible, and the conduct and language ascribed to the conductor were calculated to prejudice the minds of the jury against the appellant.

The next objection urged is that appellee was permitted, over the objections of appellant, to testify that she was a poor person and had no other means of support except her earnings. It appears that she was asked the question, "I will ask you to state if you have any other means of support except your earnings? A. No sir, I have no other means of support." She also stated that she discharged her nurse "because I could not afford to retain her." Motion was made to strike out this answer, which was overruled by the court. And again, Dr. Fairbrother was asked the question, "Q. Now Doctor, supposing a young lady who is compelled to earn her living, no parents and unmarried, receives an injury which reduces her weight from 132 to 100 pounds, or less, if she is compelled to resume her duties in order to support herself at a time when she is not physically able and brooding over such things is liable to produce such habit which you have de-

scribed," to which question specific objections were made but overruled by the court. The only purpose that these questions and the answers given could serve in the trial of this case was to show to the jury that the appellee was a poor person and thereby secure from the jury sympathy and an increased verdict for appellee. The admission of such testimony has been frequently condemned by both the Supreme and Appellate Courts, and for this error alone where verdicts for large amounts had been secured, the courts have not permitted them to stand but have said that the rule under which damages are allowed in cases of this character is actual compensation for the injury received, and that the injured person is entitled to that and nothing more. In the case of the City of Chicago v. O'Brennan, 65 Ill. 160, evidence of this character is condemned in very strong terms. And in the case of Jones & Adams Co. v. George, 227 Ill. 64, the court says: "On the trial of this case appellee was allowed to prove that he was a married man and had three children. The evidence was objected to and the objection overruled. The damages recoverable in this case can only be compensatory. The domestic relations, the financial standing or circumstances of the parties are therefore irrelevant. 1 Elliott on Evidence, Sec. 178; Barbour Co. v. Horn, 48 Ala. 566, 85 Am. St. Rep. 835, and note, where many other authorities are collected; City of Chicago v. O'Brennan, 65 Ill. 160; Pittsburgh, Fort Wayne and Chicago R. R. Co. v. Powers, 74 id. 341; City of Joliet v. Conway, 119 id. 489. The error in admitting this evidence is virtually admitted by appellee and was recognized by the Appellate Court, but it was thought that the remittitur of $1,500 ought in some way to cure this error. We cannot assent to this view. Evidence of this character not only tends to enhance the damages, but it is calculated to arouse a sympathy for appellee which is liable to unconsciously influence a jury in the decision of other

controverted questions of fact in the appellee's favor. It would be a dangerous precedent to hold that a party might introduce irrelevant testimony which would appeal to the sympathy, passions or prejudices of a jury in such a way as to insure him the verdict on all doubtful questions of fact, then permit the trial court to estimate how much of a gross sum awarded as damages was due to such irrelevant testimony and deduct that from the total verdict and render judgment for the balance, and thus cure an error but for which the verdict might have been in favor of the other party."

In the case of the Illinois Central R. R. Co. v. Seitz, 111 Ill. App. 242, the court reversed a judgment because counsel in his opening statement told the jury of the poverty of his client, and the judge in his comments says, "There is enough natural and inherent prejudice in the minds of jurors against railroads and other corporations without having it augmented by direct and improper appeals calculated to arouse the sympathy, passion or prejudice of jurors. A lawyer who tries his case in a proper manner, observing the ethics of the profession, is at a great temporary disadvantage when trying a cause against counsel who resort to improper language to obtain a verdict. Verdicts thus obtained generally are and always should be short-lived. Trial courts should set them aside as often as they are obtained."

The appellee has sought to justify by reference to a class of cases in which exemplary damages may be allowed, such as assault and battery, slander and the like, where malice enters into the negligent acts complained of, but these cases have no application where it is sought to recover compensation for injuries received as the result of the negligence of the defendant. Other errors have been assigned as to the admissibility of evidence and the conduct of counsel in the trial of this case but we do not deem it necessary to consider these questions, as upon another trial the evidence will

probably be confined to the determination of the actual injuries, and the proof of such future damages as the evidence may show to be reasonably certain to follow, and many of these matters thereby obviated.  Amann v. Chicago Traction Co., 243 Ill. 263.

It seems to us that in another trial of this case the question for trial need be but a simple one, and that is, the extent of the injury appellee actually received and the damages resulting therefrom.  Many of the questions complained of in this record can and should be avoided.

For the errors assigned the judgment of the Circuit Court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*